## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| CIVIC PARTNERS SIOUX CITY, | ) | |
| LLC, | ) | |
|     Debtor. | ) | Bankruptcy No. 11-00829 |
| | ) | |

| | | |
|---|---|---|
| CITY OF SIOUX CITY, IOWA, | ) | |
|     Plaintiff, | ) | Adversary No. 11-9045 |
| | ) | |
| v. | ) | |
| | ) | |
| CIVIC PARTNERS SIOUX | ) | |
| CITY, LLC, | ) | |
|     Defendant, | ) | |
| | ) | |
| CIVIC PARTNERS SIOUX | ) | |
| CITY, LLC, | ) | |
|     Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SIOUX CITY, IOWA, | ) | |
|     Counter-Defendant. | ) | |

| | | |
|---|---|---|
| FIRST NATIONAL BANK, | ) | |
|     Plaintiff, | ) | Adversary No. 11-9046 |
| | ) | |
| v. | ) | |
| | ) | |
| CIVIC PARTNERS SIOUX | ) | |
| CITY, LLC, et al, | ) | |
|     Defendants. | ) | |
| | ) | |

| CIVIC PARTNERS SIOUX | ) |
| CITY, LLC, | ) |
| Counter-Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| FIRST NATIONAL BANK, | ) |
| Counter-Defendant. | ) |

---

## ORDER ON MOTION FOR ABSTENTION AND REMAND

This matter came before the Court on the City of Sioux City's Motion for

Abstention and Remand in Case No. 11-9045 and for a determination of whether

both of the above-captioned adversaries (11-9045 & 11-9046) involve core or non-

core proceedings.  The Court conducted a telephonic hearing and took post-hearing

briefing.  A. Frank Baron and Malcolm Misuraca appeared for Debtor.  Peter Leo

appeared for the City of Sioux City, Iowa ("the City").  Richard Jeffries appeared

for Main Street Theatres, Inc.  Larry Kudje appeared for the United States

Attorney's Office on behalf of the Small Business Association (SBA).  G. Mark

Rice and John Moorlach appeared on behalf of First National Bank.  Jeffrey

Mohrhauser appeared for Liberty National Bank.  After hearing the arguments of

the parties, the Court took the matter under advisement.

## STATEMENT OF THE CASE

On December 7, 2010, First National Bank, a creditor to Debtor Civic

Partners Sioux City, LLC, filed a Petition for Money Judgment, Foreclosure of

2

Real Estate Mortgage and Foreclosure of Security Agreement against Debtor, in the Iowa District Court for Woodbury County (No. EQCV143628).[1]  On January 14, 2011, the City, also a creditor to Debtor, filed its own Petition at Law for Breach of Contract against Debtor, in the same court (No. LACV143863).

Debtor filed a voluntary Chapter 11 petition on April 14, 2011.  Debtor immediately removed both the breach of contract action by the City and the foreclosure action by First National to this Court as adversary proceedings in the underlying bankruptcy.  Debtor had filed counter-claims in both actions.

The City made a Motion for Abstention and Remand to the state court in its adversary.  Debtor resisted.  While that motion was pending, this Court held scheduling conferences in both adversaries.  During those scheduling conferences, it became apparent the parties disagreed about whether the adversary proceedings and the related counter-claims are core proceedings under 28 U.S.C. § 157.

The Court set a hearing in both adversaries on the question of whether the proceedings were core or non-core.  Because both cases raised nearly identical issues, the Court heard them together.  The Court also heard argument on the closely related questions in the City's abstention and remand motion in the same hearing.  Following the hearing, the Court took these matters under advisement.  The parties' arguments in all of these matters implicate and call for an

---

[1] Debtor served its Answer and Counter-Claim on January 5, 2011.

3

interpretation of the effect of the Supreme Court's recent decision in <u>Stern v.</u>
<u>Marshall</u>, 131 S. Ct. 2591 (2011). For the reasons that follow, the Court finds both
adversaries present core proceedings and denies the City's Motion for Abstention
and Remand.

## FACTS AND THE PARTIES' ARGUMENTS

Debtor is the developer and owner of an entertainment and shopping
complex in Sioux City, Iowa. The complex was to be an anchor in the
redevelopment of an area in Sioux City known as the Historic 4th Street Area.
Debtor received its primary financing for the facility from First National, which
holds a first security interest in the structure and some of the equipment. The City
agreed to do some of the necessary work on surrounding infrastructure and support
for the facility. In exchange, the City took a second security interest on much of
First National's collateral. The City also received an agreement on tax assessment
for the property.

The primary tenant of the complex is a 14-screen movie theater named Main
Street Theater. Only one of the other spaces in the facility is occupied by a
specialty shop. Other banks — Liberty National Bank and Cass County Bank —
and the Small Business Administration also claim security interests in the property
and equipment.

The City and First National filed state court claims against Debtor as it failed to meet its obligations. The First National case named several other junior interest holders as creditors in the foreclosure portion of its case.

After filing for bankruptcy, Debtor removed the two pending cases against it to this Court. They became adversary case number 11-9045—the case brought by the City—and adversary case number 11-9046—the case brought by First National.

## A. The City Adversary

In the City's case, it seeks monetary damages from Debtor for its failure to pay on two promissory notes. Debtor filed an answer and counter-claim. In the Answer, Debtor asserted several affirmative defenses. In one affirmative defense, Debtor asserted the City waived claims regarding Debtor's non-payment and agreed to modify the terms of the agreement if Debtor did not bring suit against the tenant, Main Street Theater, for failure to make rent payments. In another affirmative defense, Debtor asserted it did not receive consideration for part of the rent from its tenant that it agreed to defer. In another affirmative defense, Debtor asserted a right to set-off amounts awarded in the Counter-Claim against the debt the City alleged.

Debtor's Counter-Claim alleged that the City had breached a contract between them by: (a) failing to design and construct the public improvements in

5

and around Fourth Street; (b) failing to design and construct sidewalks and streets so that surface drainage flows away from and not into Debtor's buildings; and (c) failing to maintain common area.  Debtor's notice of removal alleged that the action was a "core proceeding."

On July 14, 2011, the City filed its Rule 9027(e)(3) Statement Upon Removal.  The Statement argued in part:

> 2.   The City denies that this action is a core proceeding.  Core proceedings are cases 'arising under' title eleven, or 'arising in' a case under title eleven.  In re Farmland Indust., Inc., 567 F.3d 1010, 1017 (8th Cir. 2009).  Because title eleven does not create the City's claim on the promissory notes or the debtor's counterclaims, this action does not 'arise under' title eleven.  See id.  Furthermore, because the City's state-law claims on the promissory notes and the Debtor's counterclaims would exist whether or not the Debtor's bankruptcy was filed, this action does not 'arise in' a case under title eleven.  See id. at 1018.

> 3.   Further, the City states that this action is a non-core, related proceeding under 28 U.S.C. § 157(c)(1).

>> [A] civil proceeding is related to bankruptcy . . . [where] the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy. . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankruptcy estate.

> In re Farmland Indust., Inc., 567 F.3d at 1019 (quoting Specialty Mills, Inc. v. Citizens State Bank, 51 F.3d 770, 774 (8th Cir. 1995)).

The Debtor asserts this action is a core proceeding primarily because it has asserted state-law counterclaims against the City.

6

> Notice of Removal, Dckt. No. 1, ¶ 3. The Debtor's Notice of
> Removal further indicates that this action will have a bearing on the
> formulation of its Chapter 11 Plan of Reorganization. Id. Resolution
> of the City's claim and the debtor's counterclaims in this Court,
> however, will be unnecessary should the Debtor's plan be confirmed
> by this Court. Accordingly, this Court should abstain from any
> further proceedings in this state-court action until the Debtor's Plan of
> Reorganization is either confirmed, or Debtor's bankruptcy action
> case is converted or dismissed, at which time litigation in state court
> may resume. See 28 U.S.C. § 1334(c)(2) (requiring abstention when
> non-core, related proceedings with no independent basis for federal
> jurisdiction other than § 1334 may be timely adjudicated in state
> court).

(Rule 9027(e)(3) Statement, ECF Doc. No. 8.)

During a scheduling hearing in the City's adversary, the Court raised the

issue of whether this was a core or non-core proceeding. Because the parties were

not in agreement, the Court set the matter for a hearing. At the hearing, and in

post-hearing briefing, the City reiterated its position that its claim and Debtor's

counter-claims were not core proceedings. The City takes the position that the

claims are only non-core "related to" proceedings.

On October 26, 2011, the City also filed the pending Motion for Abstention

and Remand. The City argued the Court should abstain from hearing the adversary

proceeding and remand the claim and counter-claim to the Iowa District Court for

Woodbury County. The City argued:

> Because the automatic stay continues to enjoin further prosecution by
> the City in this action, and because Civic Partners has stated its intent
> to seek equitable subordination of the City's claim through its Chapter

7

11 plan, the only part of this action on which this court must make a
core/non-core determination is Civic Partners' counterclaim.

(Motion, ECF Doc. No. 17, at 3.)  The City argued this Court <u>must</u> abstain from

hearing the matter under 28 U.S.C. § 133(4)(c)(2) because the Complaint and

counter-claims are "related to" proceedings arising under state law.  (<u>Id.</u> at 4.)

Debtor responded by arguing the City consented to this Court's jurisdiction.

Debtor suggested that by abstaining in the current action, this Court would set up a

potential conflict between any decisions later issued by this Court and the

Woodbury County District Court.  Debtor argued the City's consent was sufficient

to allow the Court to exercise full dispositive authority.  Debtor also argued that

these proceedings are core because they deal with the claims allowance process

and with Debtor's equitable subordination claim.  Debtor believes the equitable

subordination issue raises the core question of the extent, validity, and priority of

liens.  Debtor asserts these arguments are dispositive of both the City's Motion for

Abstention and Remand and the core/non-core issue.

### B. First National Bank Adversary

First National sued for a money judgment against Debtor and to foreclose its

mortgage on Debtor's property commonly known as Main Street Theater and

related retail space.  First National named Debtor as defendant on both the money

judgment and foreclosure counts.  First National named Debtor and junior

lienholders as defendants in the foreclosure counts.

Debtor answered the Complaint and asserted affirmative defenses of waiver and set-off against First National's claims, just as it did in the City's case.  Debtor also made a counter-claim against First National for tortious interference with business relationships or expectancies derived from the property.  Debtor asked that any award on the counter-claim be set-off against First National's claim against Debtor.

All of the named junior lienholders answered in the state court proceeding. Several of the junior lienholders raised issues of lien priority and proceed distribution under the law and an "inter-creditor agreement."  First National filed a Motion for Partial Summary Judgment before removal.  In response, many of the junior lienholders asserted similar lien and proceeds priority questions under the law and the "inter-creditor agreement."  Before the Motion for Partial Summary Judgment was decided, Debtor filed for bankruptcy and removed this case to Bankruptcy Court.

On July 11, 2011, First National filed a Rule 9027(e)(3) Statement Upon Removal, stating in part:

> 2.  The Bank denies that its state-law foreclosure action is a core proceeding.  It is not a claim that invokes substantive rights created by federal bankruptcy law.  Specialty Mills, Inc. v. Citizens State Bank, 51 F.3d 770, 773 (8th Cir. 1995), nor should it be considered a non-core related proceeding.  See id. at 773-74 (claims that do not invoke a substantive right created by federal bankruptcy law and could exist outside of a bankruptcy, 'although related to the [particular] bankruptcy' filed.).  Debtor provides no legal authority for

9

its removal of the foreclosure action except presumably, that it was impetus or setting for the Debtor's counterclaim.

.  .  .  .

The entire purpose of this Chapter 11 filing, presumably, is to allow the Debtor to restructure its debts and avoid, among other things, the Bank's foreclosure action.  If the Plan is adopted by the Court, the foreclosure is unnecessary.  If the Plan is not approved, the case should be dismissed or converted to a Chapter 7 case, and the Bank may then proceed on its previously stayed state-court foreclosure action.  The foreclosure action is, therefore, beside the point of the 'administration of the handling of the bankruptcy estate.'

.  .  .  .

(First National Rule 9027(e)(3) Statement, 11-09046, ECF Doc. No. 13.)

First National argued the state court foreclosure action is not a core proceeding under 28 U.S.C. § 157.  First National believes Debtor's tortious interference with a business expectancy counter-claim is only a "related to" proceeding on which this Court should prepare proposed findings of fact and conclusions with final judgment reserved for the district court.

Two junior lienholder creditors, SBA and Cass County Bank, join in First National's Rule 9027(e)(3) statement on the core/non-core assertions.  Liberty National, another junior lienholder, filed its own Rule 9027(e)(3) Statement and denied the foreclosure is a core proceeding, but consented to this Court entering final orders or judgments in the action.  SBA and Liberty National Bank were the only junior lienholder creditors that took a position on the core/non-core issue and also appeared at the telephone hearing.  Main Street Theaters appeared on the telephonic conference but has not filed a written position on the issue.

10

During the hearing, Debtor again argued the adversary and counter-claim are core proceedings properly handled by this Court under the same theories—consent, claims allowance/disallowance, and equitable subordination.  Debtor argued that the same rationale supporting the core/non-core determination on the City's claim and counter-claim apply to First National's claim.  Only Debtor, the City, and First National filed briefs on the issue following the telephone hearing.

## CONCLUSIONS OF LAW

**A.    Bankruptcy Court Jurisdiction and Authority to Enter Final Judgment**

This case raises questions about the forum in which these adversary cases should be decided and the proper method of decision in that forum.  Congress has provided that the United States "District courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  Congress has also provided: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."  28 U.S.C. § 157(a).  See In re AFY, Inc., 461 B.R. 541, 546 (B.A.P. 8th Cir. 2012) ("Congress has allowed district courts to refer cases and proceedings to the bankruptcy judges in its district.").  The Northern District of Iowa has, by standing order, referred all

such cases to this Court.  <u>In the Matter of the Referral of Bankruptcy Cases</u>, No.

07-AO-16-P (Dec. 5, 2007).

The United States Code limits a bankruptcy court's authority to enter final

judgments to "core proceedings."  <u>In re AFY, Inc.</u>, 461 B.R. at 547.  "Bankruptcy

judges may hear and determine all cases under title 11 and all **core proceedings**

**arising under title 11, or arising in a case under title 11**, referred under

subsection (a) of this section, and may enter appropriate orders and judgments

subject to review under section 158 of this title."  28 U.S.C. § 157(b)(1) (emphasis

added).  Congress provided a specific, but not limited, list of matters that qualify as

"core proceedings" in 28 U.S.C. § 157(b)(2).  <u>In re AFY</u>, 461 B.R. at 547.  Section

157(b)(2) specifically states:

> (2) Core proceedings include, but are not limited to--
> **(A) matters concerning the administration of the estate;**
> **(B) allowance or disallowance of claims against the estate or**
> **exemptions from property of the estate, and estimation of claims**
> **or interests for the purposes of confirming a plan under chapter**
> **11, 12, or 13 of title 11** but not the liquidation or estimation of
> contingent or unliquidated personal injury tort or wrongful death
> claims against the estate for purposes of distribution in a case under
> title 11;
> **(C) counterclaims by the estate against persons filing claims**
> **against the estate;**
> (D) orders in respect to obtaining credit;
> (E) orders to turn over property of the estate;
> (F) proceedings to determine, avoid, or recover preferences;
> (G) motions to terminate, annul, or modify the automatic stay;
> (H) proceedings to determine, avoid, or recover fraudulent
> conveyances;
> (I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;
**(K) determinations of the validity, extent, or priority of liens;**
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
**(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and**
(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

28 U.S.C. § 157(b)(2) (emphasis added).  Debtor claims that the above emphasized subsections establish the Court's ability to hear both of these adversary matters in their entirety as core proceedings.  28 U.S.C. § 157(b)(2)(A), (B), (C), (K) & (O).

The United States Code also specifically identifies a category of cases over which the bankruptcy court may preside but does not have final dispositive authority.  28 U.S.C. § 157(c)(1); see also In re AFY, 461 B.R. at 547.  Section 157(c)(1) provides:

(c)(1) A bankruptcy judge may hear a proceeding that is **not a core proceeding** but that is otherwise **related to** a case under title 11.  In such proceeding, the bankruptcy judge **shall submit proposed findings of fact and conclusions of law to the district court**, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1) (emphasis added).

13

Thus, as the statute specifically establishes, bankruptcy courts have final

dispositive authority over core proceedings.  They also have jurisdiction over non-

core, "related to" proceedings but not final dispositive authority.  In those "related

to" cases, the bankruptcy judge must submit proposed findings of fact and

conclusions of law (a report and recommendation) which the district court will

review de novo.  See In re AFY, 461 B.R. at 547.  Core proceedings are matters

which "arise in" or "arise under" title 11.  28 U.S.C. § 157(b)(1).  Non-core

matters are those that are simply "related to" a case under title 11.  28 U.S.C.

§ 157(c)(1).

The distinction between core and non-core matters is critical to the issues

pending before this Court.  The City has argued that its adversary and Debtor's

counter-claim are not core proceedings and the Court must abstain from hearing

the matters or remand the matters to state court.  In particular, the City argued that

because these matters are not core proceedings, they are subject to "mandatory

abstention" under 28 U.S.C. § 1334(c)(2).  That section provides:

> Upon timely motion of a party in a proceeding based upon a State law
> claim or State law cause of action, **related to a case under title 11
> but not arising under title 11 or arising in a case under title 11,**
> with respect to which an action could not have been commenced in a
> court of the United States absent jurisdiction under this section, the
> district court **shall abstain** from hearing such proceeding if an action
> is commenced, and can be timely adjudicated, in a State forum of
> appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added).

14

The statute sets forth six elements that must exist for mandatory abstention.

Transamerica Fin. Life Ins. Co. v. Merrill Lynch & Co., 302 B.R. 620, 627 (N.D.

Iowa 2003).  Those six elements are:

> (1) whether a timely motion is made; (2) whether the claim or cause of action is based upon state law; (3) whether the claim or cause of action is related to a bankruptcy case, but did not arise in or under the bankruptcy case; (4) whether the only basis for original jurisdiction in federal district court is the bankruptcy filing; (5) whether the action has already commenced in state court; and (6) whether the action can be timely adjudicated in the state court system.

Id. (citing In re Fitzgeralds Gaming Corp., 261 B.R. 1, 8 (Bankr. W.D. Mo. 2001)).

The City's main argument is the Court must abstain from hearing this case

because the adversary and counter-claim do not present core proceedings.  The

City contends the claims simply deal with non-core, related to matters.  The City

also argued that even if the Court finds mandatory abstention does not apply, it

should apply permissive abstention and/or equitable remand to send this case back

to state court.

First National also argued that its claim and Debtor's counter-claim are non-

core, related to proceedings.  However, not only does it not seek abstention or

remand—it affirmatively opposes abstention or remand.  Instead, First National

argued that the Court should hear these matters and prepare proposed findings of

fact and conclusions of law for the district court to review de novo.  Because

determining whether this is a core proceeding or a non-core, related to matter, is

15

dispositive of First National's whole argument and the City's main argument, the

Court will consider that question first.

## B.    Core and Non-Core Matters and the Effect of <u>Stern v. Marshall</u>

In order to make the determination between non-core and core matters, this

Court, and most others, have routinely relied on the list of examples Congress

provided in 28 U.S.C. § 157(b)(2) to safely determine if a matter was core and fell

within the Court's dispositive authority.  The Supreme Court's recent decision in

<u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011), noted an additional layer, or step, of

analysis is now required in cases like the one pending before this Court.  The

Supreme Court addressed whether a counter-claim by the estate against a creditor

that had filed a proof of claim was a core proceeding under the facts of that case.

<u>Id.</u> at 2598.  The Court first concluded that the bankruptcy court had jurisdiction

under 28 U.S.C. § 157(b)(2)(C) which specifically notes that core proceedings

include "counter-claims by the estate against persons filing claims against the

estate." <u>Id.</u> at 2604, 2608.  The Court then noted, however, that:  "Although we

conclude that § 157(b)(2)(C) permits the bankruptcy court to enter final judgment

on Vickie's counter-claim, Article III of the Constitution does not." <u>Id.</u> at 2608.  In

so holding, the Court stated:

> We conclude today that Congress, in one isolated respect, exceeded
> that limitation in the Bankruptcy Act of 1984. The Bankruptcy Court
> below lacked the constitutional authority to enter a final judgment on

a state law counter-claim that is not resolved in the process of ruling on a creditor's proof of claim.

Id. at 2620.

Much has been written and discussed about the scope and implications of Stern v. Marshall.  In re AFY, 461 B.R. at 547 ("there has been an enormous amount of discussion regarding the implications of Stern v. Marshall").  Most courts have concluded that the Supreme Court should be taken at its word — that the holding in Stern was very narrow in spite of some language in the analysis that could be given a broader application or interpretation.  See, e.g., id. (the "Supreme Court itself has cautioned that its holding is a narrow one"); Tolliver v. Bank of America (In re Tolliver), No. 09-21742, 2012 WL 360132, at *8 (Bankr. E.D. Ky. Feb. 22, 2012) (noting Stern's "holding is a narrow one"); Badami v. Sears (In re AFY, Inc.), No. 11-6065, 2012 WL 98510, at *3—4 (B.A.P. 8th Cir. Jan. 13, 2012) (concluding the Supreme Court limited the holding of Stern to the narrow issue of constitutionality of bankruptcy court authority to determine counter-claims by the estate against persons filing claims against the estate that arose under state law).  The Supreme Court repeatedly used language to emphasize the narrowness of its holding.  Stern, 131 S. Ct. at 2620 (noting the issue before the Court is "a narrow one" describing it as "slight encroachment" on constitutional authority and noting again that its opinion was limited to Congress exceeding Article III in this "one isolated respect"); see also Tolliver, 2012 WL 3601132, at *8 (quoting In re

17

Safety Harbor Resort & Spa, 456 B.R. 703, 715 (Bankr. M.D. Fla. 2011)); In re

MPC Computers, LLC, No. 08-12667, 2012 WL 386268 (Bankr. D. Del. 2012)

("the holding [in Stern] was a narrow one"); In re Olde Prairie Block Owner, LLC,

457 B.R. 692 (Bankr. N.D. Ill. 2011) (noting this limiting language in determining

that Stern was a narrow decision).  The Eighth Circuit B.A.P. has specifically

concluded:  "Unless and until the Supreme Court visits other provisions of Section

157(b)(2), we take the Supreme Court at its word and hold that the balance of the

authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is

constitutional."  In re AFY, 461 B.R. at 547–48.  This Court agrees that Stern was

narrowly written and applies it accordingly.

Given this narrow reading, it is clear that Stern did not strike the entire

structure in 28 U.S.C. § 157 allocating the division of authority into core and non-

core proceedings.  Similarly, Stern did not strike down or even address the other

enumerated examples of core proceedings in § 157(b)(2)—other than the one it

addressed—§ 157(b)(2)(C).  In re AFY, 461 B.R. at 547–48.  Stern did not even

strike down § 157(b)(2)(C) or otherwise state that counter-claims filed by the

estate against a person filing claims against the estate are never core proceedings.

Instead, Stern simply provided guidance on how broadly § 157(b)(2)(C) could

reach without exceeding constitutional limits.  Stern provided that guidance when

it stated:  "The Bankruptcy Court lacked the constitutional authority to enter a final

judgment on a state law counter-claim that is not resolved in the process of ruling

on a creditor's proof of claim."  131 S. Ct. at 2620.

**C.   Under the Supreme Court's Test in <u>Stern v. Marshall</u>, the Claims in
both Adversaries are Treated as Core Proceeding**

Cases decided since <u>Stern v. Marshall</u> addressing issues, like the one before

this Court, of whether a counter-claim by the bankruptcy estate is a core

proceeding, have resolved the constitutional authority question by looking at

"whether the action stems from the bankruptcy itself or would necessarily be

resolved in the claims allowance process."  <u>In re Freeway Foods of Greensboro,

Inc.</u>, No. 10-11282, 2012 WL 112192, at *11 (Bankr. M.D.N.C. Jan. 13, 2012)

(quoting <u>Stern</u>, 131 S. Ct. at 2618); <u>see</u> <u>Tolliver</u>, 2012 WL 360132, at *10.  Under

this test, the Court believes that the counter-claims in both of the adversaries are

core proceedings over which the Court has dispositive authority.

Here, both adversary plaintiffs (the City and First National) have made

claims against Debtor and incorporated their state court complaints (that have

become adversaries in this Court) in the proof of claims filed with the Court.  To

be clear, the proof of claim for both the City and First National is actually based on

their claims in the Adversary Complaint.  This brings the case squarely under

§ 157(b)(2)(C), the same as in <u>Stern</u>.  Unlike <u>Stern</u>, however, in this case the

counter-claim made by Debtor is necessarily resolved in the process of the ruling

on the creditor's proof of claim.  Resolution of each of the parties' claims will

necessarily require determination of the amount, if any, each of the creditors owes on Debtor's counter-claim. Debtor specifically alleged not only the counter-claim, but also the affirmative defense of set-off of any amount awarded in the counter-claim against any recovery either of the creditors made on their claim.

This case is factually unlike <u>Stern</u> in one very important respect. In <u>Stern</u>, the court specifically noted that the counter-claim required a court to make "several factual, legal determinations that were not disposed of in passing on objections to Pierce's proof of claim for defamation, **which the Court denied almost a year earlier**." 131 S. Ct. at 2617 (emphasis added). In <u>Stern</u>, there was no pending proof of claim. Thus, there was no right of set-off or reduction of the proof of claim wrapped up in, or to be resolved in, the counter-claim. Here, both the proof of claim of the City and First National are pending and have not been resolved. The counter-claims alleged in both cases specifically require the Court to determine whether there are off-sets or reductions in the allowable proof of claims of Plaintiffs.

This case also differs in a significant way from a recent decision of the Eighth Circuit Bankruptcy Appellate Panel after <u>Stern v. Marshall</u>. <u>In re Schmidt</u>, 453 B.R. 346 (B.A.P. 8th Cir. 2011). In <u>Schmidt</u>, the Bankruptcy Appellate Panel held that state court replevin actions removed by the debtor upon filing did not involve bankruptcy causes of action and were not core proceedings. <u>Id.</u> at 350–51.

20

While the removed state court claims in that case are analogous to the claims here,

the B.A.P. specifically noted in <u>Schmidt</u> that the creditors filing the replevin

actions had not filed proof of claims against the bankruptcy estate.  <u>Id.</u> at 351.  The

B.A.P. noted that if they had done so, the matters would have been core

proceedings.  <u>Id.</u> at 351.  The fact that both creditors here filed their proof of

claims, and based those claims on the claims in their adversary complaints, makes

them core proceedings under <u>Schmidt</u>.  The resolution of the counter-claims is also

core because they go to the amount and validity of the claims asserted.  28 U.S.C.

§ 157(b)(2)(B) & (C).

The fact that Debtor has specifically asserted set-off of its counter-claim as

an affirmative defense is further reason to treat these as core proceedings.  <u>See</u>

<u>generally</u>, <u>In re Columbia Hosp. for Women Med. Ctr., Inc.</u>, 461 B.R. 648, 657

(Bankr. D.D.C. 2011) (set-off claim by creditor is "paradigmatic core

proceeding"); <u>In re S.W. Bach & Co.</u>, 425 B.R. 78, 91 (Bankr. S.D.N.Y. 2010)

(citing <u>In re Iridium Operating LLC</u>, 285 B.R. 822, 834 (S.D.N.Y. 2002) ("set-off

defense can be particularly important in regarding the claim as core")).  The court

in <u>Iridium Operating</u> specifically stated:

> Where a creditor of the estate files a proof of claim and the estate
> counterclaims against him, or where the estate brings an action against
> a creditor and the creditor counterclaims asserting a set-off, it is
> entirely appropriate for the action to be classified as a core
> proceeding.

Iridium Operating, 285 B.R. at 832 (quoting Interconnect Tel. Servs., Inc. v.

Farren, 59 B.R. 397, 400—01 (S.D.N.Y. 1986)).

First National has additionally argued, like the creditors in the replevin

actions in the Schmidt case, its foreclosure claim cannot be considered core in the

first place.  Thus, First National seems to imply that regardless of whether the

counter-claims were core, the foreclosure action itself would not be a core

proceeding.  Case law has concluded, however, that where a foreclosure action is

intertwined with a counter-claim raising core proceedings, the foreclosure should

be treated as a core proceeding.  See In re CRD Sales & Leasing, Inc., 231 B.R.

214, 219–20 (Bankr. D. Vt. 1999) (citing In re Shore Rd. Owners Corp., 187 B.R.

837, 854 (E.D.N.Y. 1995)).  In CRD Sales and Leasing, the court noted that

"foreclosure proceedings are based on state law and are generally deemed non-

core."  231 B.R. at 218.  The court then noted "the foreclosure action here,

however, is based on the same facts as debtor's equitable subordination [counter-

claim]."  Id.  "To reach a decision on the equitable subordination claim, we must

necessarily decide the validity of [creditors] attempted state court foreclosure, and

vice-versa."  Id. at 219.  The court concluded:

> We find that we must hear the foreclosure action as a core matter
> under 28 U.S.C. §§ 157(B)(K) & (O) because the foreclosure
> proceeding, while based on state law, is so intertwined with the
> undoubtedly core subordination claim and the request to determine the
> validity and extent of Bank's lien.

22

Id. at 219.

The same conclusion applies here.  While the Bank filed the foreclosure claim, it also made a claim for a money judgment which serves as the basis for its proof of claim.  Debtor has asserted a counter-claim which seeks to set-off the value of that counter-claim against any money judgment or entitlement to proof of claim.  That alone brings the foreclosure proceeding and the intertwined counter-claim into the category of core proceedings.

Moreover, like the CRD Sales and Leasing case, Debtor in these cases has also alleged equitable subordination.  The Bank, in particular, has specifically acknowledged the equitable subordination claim has been raised as part of Debtor's counter-claim in the adversary proceedings.  Debtor has also raised equitable subordination as to the City.  This Court finds the following rationale persuasive:

> Such rulings [treating foreclosure claims as core when there is an equitable subordination counterclaim or defense] are further based, we think, upon an explicit realization that once an equitable subordination claim or defense is raised, any actions, claims, or liens so intertwined with that equitable subordination claim should be heard by the bankruptcy court.  Equitable subordination is a bankruptcy remedy peculiar to the equitable jurisdiction of the bankruptcy court and cannot be severed from, and exist independently of, a lien or claim which will not be determined in the bankruptcy court.

Id. at 219 (quoting In re 9281 Shore Road Owners Corp., 187 B.R. 837, 854 (Bankr. E.D.N.Y. 1995)).

A number of other courts have reached similar conclusions in dealing with equitable subordination assertions and counter-claims.  See, e.g., In re USDigital, Inc., 461 B.R. 276 (Bankr. D. Del. 2011); In re M. Paolella & Sons, Inc., 161 B.R. 107, 116 (Bank. E.D. Pa. 1993).

In M. Paolella & Sons, the Court noted "the cases holding that equitable subordination is a 'core' proceeding are legion."  161 B.R. at 116.  The Court noted specifically that it fit within several subsections of § 157(b)(2) including those dealing with "the administration of the bankruptcy estate, . . . proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship."  Id.

In USDigital, Inc., the court used a slightly different analysis to conclude that while a claim for equitable subordination was not a statutorily enumerated core proceeding under § 157, it was, at a minimum, a non-enumerated core proceeding as one which invoked substantive rights under title 11 that could only be raised in bankruptcy.  Id. at 285.  The court further noted that "equitable subordination, set forth in § 510(c), can only be raised in a bankruptcy court."  Id. at 285.  The court concluded that such a claim, like others, specifically arising in and arising under title 11 "is a unique creature of bankruptcy law."  Id.  In other words, the Court would have jurisdiction under the portion of Stern v. Marshall

24

noting that a counter-claim which arises under the Bankruptcy Code would be a core proceeding.

The foreclosure action itself can also be considered a core proceeding for one additional reason. It specifically raises issues about the extent, priority, and/or validity of First National's lien and/or the liens of other creditors. See 28 U.S.C. § 157(b)(2)(K) (extent, priority, and validity of liens is core proceeding). Several junior lienholders have noted in their answers to the foreclosure complaint that an "inter-creditor agreement" will necessarily affect the extent or priority of First National's lien rights and the rights of other lienholders. These other lienholders are creditors in this case.

For all the reasons stated above, this Court concludes that all the claims—the adversary claims removed from state court and the counter-claims of Debtor in both cases—are core proceedings. Based on this conclusion, the Court has authority to issue final judgments on all issues raised in these adversaries.[2]

## D.    Mandatory Abstention is Not Applicable

The Court's determination that the adversaries and counter-claims present "core" matters resolves the only question raised by First National—whether the

---

[2] Given the conclusion that this is a core proceeding, the Court need not resolve the issue of whether consent of the City and First National gave this Court authority to enter final decisions on all issues.

Bankruptcy Court could exercise final dispositive authority and the main argument by the City that mandatory abstention applies. As noted above, one necessary element of mandatory abstention is that the proceeding is a non-core related to proceeding. <u>Transamerica Life Ins.</u>, 302 B.R. at 627 (element (3) of test). The Court's conclusion that this is a core proceeding arising under or arising in title 11—and thus not a non-core "related to" case—is dispositive of the mandatory abstention issue. <u>In re CRD Sales & Leasing, Inc.</u>, 231 B.R. at 220; <u>see also</u> <u>In re Schmidt</u>, 453 B.R. at 351–52 (noting relationship of core determination and mandatory abstention).

Even if the Court had determined that all of the claims in the City's adversary were not core, and instead were merely non-core "related to" issues, the City's claim for mandatory abstention still fails. <u>Id.</u> As the court noted in <u>CRD Sales and Leasing, Inc.</u>, in a case involving equitable subordination, the last prong of the test for mandatory abstention—that the proceeding can be timely adjudicated in the state forum—would also be lacking. 231 B.R. at 220. As the court noted, in order to "avoid conflicting judgments", the court "could not grant relief from the automatic stay [to allow foreclosure to proceed] until rendering a decision on the equitable subordination claim." <u>Id.</u> The court pointed out "equitable subordination is a defense to foreclosure, a defense unavailable at the state court." <u>Id.</u> The court concluded the last prong of the mandatory abstention test could not be satisfied

26

"because any action on the non-core foreclosure action would necessarily be stayed until our determination of the equitable subordination claim." Id. The same conclusion applies here. The City's claim for mandatory abstention fails both because this is a core proceeding and not a non-core related to proceeding, and because the state court would not be able to timely adjudicate this matter.

**E.     Remaining Issues Raised by the City — Permissive Abstention and Equitable Remand**

The above analysis disposes of the First National's only argument and the City's main argument — mandatory abstention. However, the City also asks the Court to grant permissive abstention and/or an equitable remand. First National and Debtor both resist any type of abstention or equitable remand.

1.     <u>Permissive Abstention</u>

"Permissive Abstention" is available under 28 U.S.C. § 1334(c)(1). That section provides, in relevant part, that the "court in the interest of justice or in the interest of comity with state courts or respect for state law [may abstain] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). The Eighth Circuit has analyzed this section as follows:

> Because the statute provides only general standards for determining whether abstention is appropriate, i.e., 'in the interest of justice, or . . . comity,' courts have been guided by 'well developed notions of judicial abstention,' which include the premise that federal courts should exercise their jurisdiction if it is properly conferred and that

27

abstention is the exception rather than the rule.  Additionally, courts
have developed a number of factors that may be considered in
determining whether abstention is appropriate.  These include: 1) the
effect or lack thereof on the efficient administration of the estate if a
Court recommends abstention, 2) the extent to which state law issues
predominate over bankruptcy issues, 3) the difficult or unsettled
nature of the applicable law, 4) the presence of a related proceeding
commenced in state court or other nonbankruptcy court, 5) the
jurisdictional basis, if any, other than 28 U.S.C. § 1334, 6) the degree
of relatedness or remoteness of the proceeding to the main bankruptcy
case, 7) the substance rather than the form of an asserted 'core'
proceeding, 8) the feasibility of severing state law claims from core
bankruptcy matters to allow judgments to be entered in state court
with enforcement left to the bankruptcy court, 9) the burden on the
bankruptcy court's docket, 10) the likelihood that the commencement
of the proceeding involves forum shopping by one of the parties, 11)
the existence of a right to a jury trial, and 12) the presence in the
proceeding of nondebtor parties.

In re Williams, 256 B.R. 885, 894 (8th Cir. 2001).  See also Transamerica Life Ins.

Co., 302 B.R. at 628-29 (listing elements).

First National and Debtor present numerous arguments in support of this

Court maintaining jurisdiction.  The City offers numerous arguments in opposition

to this Court maintaining jurisdiction.  This Court has broad discretion in deciding

permissive abstention issues.  In re Lee, No. 10-1772, 2012 WL 29185, at *10 (4th

Cir. Jan. 6, 2012) (citing Baker v. Simpson, 613 F.3d 346, 352 (2d Cir. 2010);

Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.), 505 F.3d 237, 249

(3d Cir. 2007)).

First National and Debtor present numerous arguments in support of this

This Court relies upon the following factors in exercising its discretion not

to abstain:  (1) the effect on the efficient administration of the estate if abstention is

recommended; (6) the degree of relatedness of the proceeding to the main

bankruptcy case; (8) the feasibility of severing state law claims from core

bankruptcy matters to allow judgments to be entered in state court with

enforcement left to the bankruptcy court; (9) the lack of burden on the bankruptcy

court's docket; (10) the unlikelihood that the commencement of this proceeding

involves forum shopping; and (12) the lack of non-debtor parties present in the

proceedings.

In CRD Sales and Leasing, the court addressed permissive abstention

arguments.  231 B.R. at 220–21.  It cited and relied on the rationale of a Georgia

bankruptcy court addressing similar issues:

> The Court notes . . . there is a danger of inconsistent results between
> the state court and this Court since the claims stated in [several
> counts] are core matters and cannot be adjudicated in the state court.
> This could cause difficulty in the administration of the underlying
> bankruptcy case depending upon the outcome of a state court
> proceeding. For example, this Court might decide that the conduct of
> Defendant in the foreclosure warrants equitable subordination of
> Defendant's claim while, at the same time, a state court might rule that
> foreclosure was proper and that no damages are warranted. In
> addition, the administration of this bankruptcy case would have to be
> stayed until the resolution of the severed matters in state court. Such a
> delay could be avoided by resolving all matters here, in one trial. For
> these reasons and in the interest of judicial economy, the Court will
> not voluntarily abstain . . . .

Id. (quoting In re Walker, 224 B.R. 239, 242 (Bankr. M.D. Ga. 1998)).  We agree

with this rationale and the following observation from CRD Sales and Leasing:  "A

29

remand here would demand that the same factual allegations be heard twice, in two different forums, creating the possibility of inconsistent results." Id.

Further, the Iowa state courts are currently underfunded and understaffed. This Court believes it is unnecessary and improper to place additional burdens on the state court when this Court can deal with the issues here. For all the above-stated reasons this Court will not voluntarily abstain from hearing the counter-claims.

### 2.    Equitable Remand

The City's final argument is that this Court should abstain and remand for equitable reasons pursuant to 28 U.S.C. § 1452(b).

> (a)    A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.
> (b)    The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1452(a)—(b).

> The discretionary abstention and equitable remand doctrines are similar.    Courts considering relief under these sections consider similar factors.  These factors include: Whether remand would prevent duplication or uneconomical use of judicial resources; the effect of the remand on the administration of the bankruptcy estate; whether the case involves questions of state law better addressed by a state court;

comity; judicial economy; prejudice to involuntarily removed parties; the effect of bifurcating the action, including whether remand will increase or decrease possibility of inconsistent results; the predominance of state law issues and non-debtor parties; and the expertise of the court in which the action originated.

Transamerica Fin. Life Ins. Co., 302 B.R. at 629—30.

This Court does not believe equitable remand is appropriate in the current action. As noted by Transamerica, the vast majority of courts find that the test for equitable remand and permissive abstention are virtually identical. Id.; see In re Donington, Karcher, Salmond, Ronan & Rainone, 194 B.R. 750, 759–60 (Bankr. D.N.J. 1996) ("considerations relevant to determine appropriateness of equitable remand and permissive abstention . . . are essentially identical, and, therefore, a court's analysis is substantially the same for both types of relief"); In re SOL, LLC, 419 B.R. 498, 510 (Bankr. S.D. Fla. 2009) ("criteria for permissive abstention or remand under 28 U.S.C. § 1452(b) are virtually identical"); In re Roman Catholic Archbishop of Portland in Oregan, 338 B.R. 414, 420 (Bankr. D. Or. 2006) ("the equitable factors that the court considers in determining whether to abstain on a discretionary basis are used in determining remand motions"). The same reasons the Court denied permissive abstention thus apply equally here. Moreover, there are no non-debtor parties to the action. While the action is predominated by state law issues, the issues do not involve hyper-technical issues that have never been handled by Iowa courts before. The majority of factors thus

31

weigh in favor of maintaining the counter-claim in this Court.  Equitable removal is denied.

## CONCLUSION

For the above-stated reasons, the Court will decide the adversary cases and counter-claims as core proceedings.  The Court finds mandatory abstention inapplicable.  The Court further exercises its discretion to decline the request for permissive abstention and/or equitable remand.

**WHEREFORE,** the City of Sioux City's Motion for Abstention and Remand (ECF Doc. No. 17) is **DENIED**.  The claims removed to this Court by Debtor and the related counter-claims are core proceedings subject to final decision in this Court.

Dated and entered:   March 8, 2012

_____
**THAD J. COLLINS**
**CHIEF BANKRUPTCY JUDGE**